JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Gregory D. Waina, dba Waina 
Company ("Waina"), appeals from the verdict of the Cuyahoga County Court of Common Pleas which awarded him $2,700 under the terms of a contract with defendant-appellee, Thomas Abdallah ("Abdallah"). For the following reasons, we reverse, award final judgment to Waina and remand in part.
 {¶ 2} A review of the record reveals the following facts: Abdallah is a businessman that has various business and real estate holdings in the Akron and Cuyahoga Falls area. Waina is a certified public accountant who specializes in securing new financing for distressed business clients.
 {¶ 3} On July 15, 2003, Abdallah submitted a bid to purchase two Clark gas stations through bankruptcy proceedings. Pursuant to the terms of the bankruptcy proceeding, Abdallah had 30 days to secure financing.
 {¶ 4} On July 18, 2003, upon the advice of his advisor, Charles Richardson, Abdallah initiated contact with Waina to assist in the raising of funds for the purchase of the two gas stations. On July 25, 2003, the parties signed a Fee Agreement which provided that Waina will "assist [Abdallah] in securing capital (debt or equity or the equivalent) to bridge [Abdallah's] capital shortage, to establish a relationship with a funding source and to strengthen the operational and administrative systems to support future growth." The Fee Agreement provided, among other things, that "Waina will manage the capital raising process" and that Waina would use his "best efforts to develop, with [Abdallah's] full cooperation, the strategic and financing plan and to secure capital on the most advantageous terms and acceptable conditions." The Fee Agreement did not require Waina to personally secure the capital funding. The Fee Agreement also provided that there was no "firm undertaking or commitment on Waina's part which guarantees or provides assurances of successfully raising capital."
 {¶ 5} The Fee Agreement provided that Waina would receive a non-refundable retainer of $15,000 for 45 days of work, after which he would receive an hourly fee of $200. The contract then provided that "if [Abdallah] is successful in securing capital (debt or equity or the equivalent thereof,) a Success Fee of 5% of the amount raised shall be payable, net of the retainer above, to Waina at closing."
 {¶ 6} Abdallah did not read or review the Fee Agreement before signing it.
 {¶ 7} On or about July 29, 2003, Abdallah informed Waina that he had submitted a bid to purchase an additional 24 Clark gas stations through bankruptcy proceedings and that additional capital needed to be secured.
 {¶ 8} During the term of the employment, Waina worked closely with Abdallah and analyzed information provided by Abdallah, including financial information, tax returns, and financial statements prepared by Abdallah's accountant. Waina also met with officers of Chicago Broadway Bank to discuss funding for the venture.
 {¶ 9} In August, 2003, Abdallah obtained funding from two sources, one from a lender named Gleitzman in the amount of $1,000,000 and the other from Chicago Broadway Bank in the amount of $10,500,000. Shortly thereafter, Waina submitted invoices to Abdallah for $50,400.05 (the Success Fee for the Gleitzman loan) and $247,000 (a portion of the Success Fee for the Broadway Bank loan). Abdallah did not pay these invoices.
 {¶ 10} On March 4, 2004, Waina filed this action seeking to recover the Success Fees under the terms of the Fee Agreement.
 {¶ 11} On August 3, 2004, Abdallah filed an answer and counterclaim alleging failure of performance and seeking a refund in the amount of $5,000.
 {¶ 12} On November 8, 2004, the matter proceeded to a bench trial. During the trial, the trial court stated the following, in pertinent part:
 {¶ 13} "There's nothing in the agreement that says that he [Waina] is exclusively the person to contact capital sources.
 {¶ 14} "It says that he will assist and he will manage the process, which includes, but it does not exclude anybody else from seeking sources of funding, nor does it require in the contract that the only way he can be paid is if he is the one that secures funding. That isn't anywhere here.
 {¶ 15} "In fact, on Page 3 it says, `if the client is successful in securing capital.' It doesn't say `in securing capital presented by Mr. Waina.'
 {¶ 16} "Stated within the terms of the contract. The contract is clear. It does not limit sources of funding to only be brought to the client from this CPA.
 {¶ 17} "* * *
 {¶ 18} "And if I am reading this wrong and this says he's the only person that can bring it, then you need to show me that. It says, `assist.' It doesn't say that `assist' has to be finding the funding source.
 {¶ 19} "* * *
 {¶ 20} "You're trying to leave the impression that because he didn't find the funding source, that somehow that negates his contract, and the contract itself doesn't say that. It says, `the objective will be to assist in securing capital; proposed course of action; development and implementation of the plan will include, but not be limited to.'
 {¶ 21} "* * *
 {¶ 22} "`Waina will manage the capital raising process, to include.' It does not guarantee success.
 {¶ 23} "* * *
 {¶ 24} "That doesn't mean he has to find a funding source, unless you show me that somewhere in the contract.
 {¶ 25} "It's a contract. We have to stay within the terms of the contract."
 {¶ 26} Despite making these statements, the trial court allowed Abdallah to testify that it was his understanding that Waina had to do more than merely assist in obtaining the capital to fund the venture, specifically, that Waina had to "bring the lender to the table" in order to earn the Success Fee. Abdallah asserts that Waina is not entitled to the Success Fee because Abdallah obtained the financing and Waina did nothing to obtain the required capital.
 {¶ 27} On June 1, 2005, the trial court issued its Journal Entry and Opinion, expressly finding that Waina had substantially performed according to the terms and conditions of the contract. However, the trial court found that a "significant ambiguity"[1] existed as to "what requirements must be fulfilled in order for [Waina] to be entitled to a Success Fee."[2] Specifically, that "both sides [did not have] a clear understanding of what [Waina's] obligations were to earn the disputed Success Fee."[3] Looking into the intent of the parties, the trial court found that Waina was not entitled to the Success Fee because Waina "had to do more than simply assist [Abdallah] in obtaining financing. The record does not support a claim that [Waina] brought potential lenders to the table; it only shows that he compiled financial information."[4]
Accordingly, the trial court awarded Waina only $2,700 for the actual work performed after the expiration of the initial 45-day contract.
 {¶ 28} It is from this order that Waina timely appeals and raises three assignments of error for our review.
 {¶ 29} "I. The trial court violated fundamental tenets of contract law and construction, and erred as a matter of law, when, under the guise of finding ambiguity, it intruded upon the parties' express, written contract and imputed terms and conditions that were neither bargained-for nor intended by the parties at the time of contracting."
 {¶ 30} It is generally presumed that the intent of the parties to a contract resides in the language they choose to employ in the agreement. Shifrin v. Forest City Enterprises
(1992), 64 Ohio St.3d 635. Only when the language of a contract is unclear or ambiguous will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Id.
 {¶ 31} When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties. Id. If no ambiguity appears on the face of the contract, parole evidence cannot be considered in an effort to demonstrate such an ambiguity. Id. "Common words appearing in a written contract will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Id.
 {¶ 32} Here, page 3 of the Fee Agreement is clear and unambiguous as to the manner in which Waina would be entitled to a Success Fee: "If the Client, Abdallah, was successful in securing capital (debt or equity or the equivalent thereof), a Success Fee of 5% of the amount raised shall be payable, net of the Retainer, to Waina at the closing."
 {¶ 33} The plain meaning of this unambiguous term of this contract provision is that Abdallah was obligated to pay Waina a Success Fee if he obtained financing. Nowhere in the contract is there language that made it ambiguous or in any way supported Abdallah's claim that Waina had to personally secure the financing in order to receive the Success Fee. Rather, the contract provides only that Waina will "assist" and "manage the process." Indeed, it specifically provides that there is no "firm undertaking or commitment on Waina's part which guarantees or provides assurances of successfully raising capital." Both parties are experienced businessmen. If they had intended to structure the Fee Agreement to make the Success Fee contingent on Waina's ability to personally secure financing, they easily could have used language to that effect. There is simply nothing in the contract making Abdallah's obligation to pay contingent on Waina's ability to secure financing. "Where a written instrument is unambiguous, a court must give effect to the expressed intentions of the parties." Olympic Title Ins. Co. v. FifthThird Bank, Montgomery App. Nos. 19324, 19319, 2002-Ohio-5826.
 {¶ 34} Having determined that the contract provision dealing with the Success Fee is not ambiguous, we find that the trial court erred in allowing parole evidence regarding Abdallah's understanding of the contract. The terms of the contract are unambiguous and Abdallah cannot now claim he did not understand the terms. The trial court had no authority to rewrite the contract simply because it believed the terms to be unfair. Where a written agreement is plain and unambiguous it does not become ambiguous by reason of the fact that in its operation it will work a hardship on one of the parties thereto and corresponding advantage to the other. Forcina v. State Auto Ins. Co. (Sept. 21, 1989), Cuyahoga App. No. 55731. Id.; Ullmann v. May (1947),147 Ohio St. 468, paragraph one of the syllabus.
 {¶ 35} Finally, it bears repeating that Abdallah testified that he did not read the contract before he signed it. Logically, it simply does not follow that the terms and conditions of the Fee Agreement were not as Abdallah understood them to be, since he failed to read the contract. During the trial, he presented no evidence to show fraud, illegality, or mutual mistake as to the formation of the contract. A contract is interpreted by its plain meaning, even if one of the parties fails to read the contract.Smaltz v. Nat'l. City Bank (2000), 136 Ohio App.3d 203.
 {¶ 36} The first assignment of error is sustained and judgment is awarded to Waina in the amount of $510,000 (5% of the $11,500,000 raised by Abdallah).
 {¶ 37} "III. The trial court erred as a matter of law by refusing to award appellant prejudgment interest in accordance with R.C. § 1343.03(A), where appellant was entitled to such interest pursuant to his written fee agreement with the appellee."
 {¶ 38} The award of prejudgment interest as to claims arising out of breach of contract is governed by R.C. 1343.03(A). BainBuilders, Inc. v. Rockport Retirement Limited Partnership (July 22, 1999), Cuyahoga App. Nos. 74486 and 74672. In pertinent part, R.C. 1343.03(A) provides that: "* * * when money becomes due and payable upon any bond, bill, note, or other instrument of writing, * * * for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
 {¶ 39} In a breach of contract case between private parties where liability is established, the trial court does not have discretion in awarding prejudgment interest. Reminger RemingerCo., L.P.A. v. Fred Siegel Co., (Mar. 1, 2001), Cuyahoga App. No. 77712, citing Dwyer Elec., Inc. v. Confederated Builders,Inc., (Oct. 29, 1998), Crawford App. No. 3-98-18. Specifically, in cases like this one, where a party has been granted judgment on an underlying contract claim, that party is entitled to prejudgment interest as a matter of law. Id.
 {¶ 40} In determining whether to award prejudgment interest pursuant to R.C. 1343.03(A), an aggrieved party should be compensated for the lapse of time between accrual of the claim and judgment. Royal Elec. Constr. Corp. v. Ohio State Univ.,73 Ohio St.3d 110, 116, 1995-Ohio-131. Accordingly, the only issue for resolution by a trial court in claims made pursuant to R.C.1343.03(A) is how much interest is due the aggrieved party. Id. In order to determine this, the trial court must make a factual determination as to "when interest commences to run, i.e., when the claim becomes `due and payable,' and to determine what legal rate of interest should be applied." Dwyer Elec., supra; quoting Royal Elec., 73 Ohio St.3d at 115. Thus, while the right to prejudgment interest in a contract claim is a matter of law, the amount awarded is based on the court's factual determination of an accrual date and interest rate. Id.
 {¶ 41} Here, Waina's claim for the Success Fee is based on the breach of the Fee Agreement, which provided that Waina was to receive 5% of the capital raised by Abdallah. Since this Court has determined that judgment be granted against Abdallah in the amount of $510,000 for the Success Fee, we find that Waina is also entitled to prejudgment interest. Accordingly, Waina's third assignment of error is sustained and the matter is remanded to the trial court for a determination of the amount of prejudgment interest owed, i.e., to determine the "due and payable" date and the legal rate of interest.
 {¶ 42} "II. The trial court erred as a matter of law by refusing to treat appellant's complaint as if it had been amended to conform to the testimony and evidence presented at trial, where the issues were tried with the implied, if not express, consent of the appellees; and the appellant's testimony and evidence were presented and admitted without objection."
 {¶ 43} Given the disposition of the first assignment of error, this Court need not address this assignment of error. See App.R. 12(A)(1)(c).
Reversed, final judgment entered for Waina; case remanded for further proceedings consistent with this opinion.
It is ordered that appellant recover of appellees its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and J. Corrigan, J., concur.
[1] See V. 3339, P. 769.
[2] See V. 3339, P. 768.
[3] See V. 3339, P. 769.
[4] See V. 3339, P. 770.